## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| **NIKE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 9:06-CV-43** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ADIDAS AMERICA INC. et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## ADIDAS DEFENDANTS' MOTION TO DISQUALIFY DR. PETER R. CAVANAGH AND BRIEF IN SUPPORT THEREOF

William H. Boice
Mitchell G. Stockwell
Catherine E. Hart
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia  30309
(404) 815-6500
(404) 815-6555 (Facsimile)

Michael E. Jones
Allen F. Gardner
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P.O. Box 359
Tyler, Texas  75710
(903) 597-8311
(903) 593-0846 (Facsimile)

## <u>INTRODUCTION</u>

adidas moves the Court to disqualify Nike's proposed expert, Dr. Peter R. Cavanagh.  Dr. Cavanagh is presently acting as adidas's expert in an on-going dispute with Akeva L.L.C., which filed a patent infringement complaint concerning adidas's a$^3$ shoe technology that is also accused in this action.  During the course of Dr. Cavanagh's engagement in the *Akeva* case, he worked with adidas's counsel and consulted on testing and other procedures relevant to adidas's defense in that case.  Moreover, even before the *Akeva* case, adidas had hired Dr. Cavanagh to consult or act as an expert for adidas in another matter in which it has been accused of patent infringement.

In effect, Nike seeks to have Dr. Cavanagh switch sides – conduct that Federal courts do not condone of experts.  Nike's conduct places adidas in an awkward position – at the same time that it may be relying on Dr. Cavanagh's testimony in defending itself in the *Akeva* case, it may be faced with Dr. Cavanagh asserting an inconsistent position in this action and it will certainly be faced with needing to cross-examine the very expert it seeks to use to persuade the *Akeva* court of its position.  As a practical matter, adidas simply has no good response to the dilemma Nike's insistence on using Dr. Cavanagh creates.

Dr. Cavanagh previously chose to receive adidas's confidential information, learn of its counsel's strategies for defending the accused a$^3$ technology and provide consulting and expert opinions in the *Akeva* case and another case.  Those actions occurred before this suit and before Nike sought to have Dr. Cavanagh switch sides.  Given the availability to Nike of other experts and the early posture of this case, the most appropriate manner of dealing with the serious complications Nike's effort to engage Dr. Cavanagh creates is to disqualify him from acting on behalf of Nike.  adidas thus moves the Court to issue an order disqualifying Dr. Cavanagh from serving as a consultant or expert for Nike in this case.

## STATEMENT OF FACTS

1.      Dr. Peter Cavanagh is the Virginia Kennedy Chairman of Biomedical Engineering and Academic Director of Diabetic Foot Care at the Cleveland Clinic Foundation.  *See* Dr. Cavanagh's c.v., attached hereto as Exhibit A.  Dr. Cavanagh routinely consults with members of the footwear industry, ranging "from occasional days consulting for some companies (e.g., Karhu-Titan) to major projects lasting several months or years for other organizations (e.g., PUMA and **Adidas-France**)."  *See id.*, p. 50 (emphasis added).

2.      Dr. Cavanagh was previously retained by the adidas Defendants as a consulting expert in the matter of *adidas America, Inc. v. Anatomic Research, Inc.*, 3:01CV01720-AS (D. Ore.) (the "*Anatomic Research* case") and is currently retained in the ongoing matter of *Akeva LLC v. adidas America, Inc.*, 1:03CV01207, (the "*Akeva* case") pending in the Middle District of North Carolina.  *See* Declaration of Doug Kline (hereinafter "Kline Declaration"), attached hereto as Exhibit B, ¶ 3.

3.      In the *Anatomic Research* case, Dr. Cavanagh was given internal, confidential adidas drawings to consider and engaged in discussions concerning adidas's shoe designs, design philosophy, and the comparison of adidas's shoes against Anatomic's patent claims.  *See id.*, ¶ 4. Among other privileged topics, Dr. Cavanagh was consulted on ways in which to identify whether adidas's shoes conformed to the limitations of the patent claims being asserted by Anatomic Research.  *Id.*

4.      Dr. Cavanagh also serves as a consultant and expert for adidas in the ongoing *Akeva* case.  In that case, Akeva has accused adidas's a$^3$ line of shoes, the same shoes at issue in this case, of infringing certain patents.  *See id.*, ¶ 5.  The consulting agreement between adidas and Dr. Cavanagh in the Akeva case recites adidas's expectation that Dr. Cavanagh will "keep

all information relating to this litigation confidential and that [he would] not disclose it to anyone without our prior approval."  *See id.*, ¶ 6.

     5.     In the *Akeva* case, the plaintiff asserted two patents, including U.S. Patent No. 6,604,300 ("300 patent").  Ex. C (*Akeva* complaint and excerpts from 300 patent).  Among other elements, claim 1 from the 300 patent recites "[a] shoe comprising: a flexible **plate** having upper and lower surfaces and supported between at least a portion of the rear sole and at least a portion of the heel region of the upper, peripheral portions of the plate being restrained from movement relative to an interior portion of the plate…"  *Id.*  (emphasis added).  A key area of dispute in the *Akeva* case thus concerns whether the $a^3$ shoes have the claimed plate.

     6.     Akeva secured expert testimony to address this issue and adidas hired Dr. Cavanagh to, among other things, respond.  Dr. Cavanagh issued an expert report and gave deposition testimony that critiqued the methodology followed by Akeva's expert.  *See* Kline Declaration, at ¶ 7.  In addition, however, Dr. Cavanagh was consulted about mechanisms of testing adidas's accused shoes to address some of the issues in the lawsuit and other defenses available to adidas.  Although not discussed in his report, Dr. Cavanagh received other confidential information in connection with his discussions with adidas's counsel, including confidential CAD drawings of adidas's accused shoes and component parts of accused shoes.  *Id.*  Dr. Cavanagh learned of adidas's strategy for defending the accused $a^3$ technology as a result of these discussions.  *See id.*[1]

     7.     In the present case, Nike asserts its U.S. Patent No. 6,497,796 against various shoes in the same $a^3$ line accused in the *Akeva* case.  In its preliminary infringement contentions,

---

[1] Although adidas secured a summary judgment of noninfringement in the *Akeva* case, *Akeva* has appealed that decision and oral argument on the appeal is scheduled for October, 2006.  *See id.* at ¶ 5.

a plate is among other features accused in adidas's shoes.  Ex. D.  Thus, Nike asserts claim 16, which recites that "said heel plate underlies at least a portion of an arch of the foot and substantially all of the heel."  Ex. D, at 7.  Nike's infringement contentions state an intent to possibly try to add more claims later in the case and there are other claims in the 796 patent that claim the plate in even more detail.  *See, e.g.,* Complaint, at Ex. A (claim 8: reciting that the "sole includes a semi-rigid heel plate generally located between said plurality of said at least one support element and a heel of the foot, said heel plate distributing impact forces from the heel to said plurality of said at least one support element").

8.     Because the *Akeva* case involves the a[3] technology accused in this case, as well as similar claim issues, adidas sought to retain Dr. Cavanagh as an expert in this case.  It was then that adidas learned of the conflict.  Counsel for adidas raised the issue with Nike and objected to its use of Dr. Cavanagh on June 1 and June 14, 2006.  Exs. E and F.  Nike did not thereafter press its plan to use Dr. Cavanagh until July 25, 2006.  At that time, it forwarded Dr. Cavanagh's c.v. along with the resumes of two other experts it had retained.  Ex. G.

## ISSUE PRESENTED

As a result of Dr. Cavanagh's past and ongoing relationship with adidas, adidas has entrusted Dr. Cavanagh with its confidential information and seeks to use him to establish that there is no evidence that adidas' accused a[3] shoes have a plate as asserted in the Akeva patents. Nike seeks to use Dr. Cavanagh as an expert concerning the same shoes and technology -- and possibly concerning even the issue of whether the accused adidas shoes have a plate as claimed by Nike's 796 patent.  Under the circumstances, adidas asks the Court to determine that Dr. Cavanagh should be precluded from serving as an expert or consultant for Nike in this case.

## ARGUMENT

**I.**    **The Fifth Circuit Requires Disqualification of Experts Who Enter Into Confidential Relationships and Obtain Confidential or Privileged Information.**

This Court has the inherent power to disqualify experts. *Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996).   In cases where an expert has clearly switched sides, for example:

> [N]o one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention. This is a clear case for disqualification.

*Id*. Even when an expert has not clearly switched sides, however, courts will disqualify an expert under the following test: "First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?  Second, was any confidential or privileged information disclosed by the first party to the expert?" *Id*.   If both questions can be answered affirmatively, then the witness may be disqualified. *Id.*   Furthermore, some courts have also considered "the public interest in allowing or not allowing an expert to testify." *Id.*

To resolve those two questions, the Court must first determine whether a party and the expert had "a relationship which permitted [the retaining party] reasonably to expect that any communication would be maintained in confidence [by the expert]." *Id*. at 1182.  This kind of relationship exists when "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Id*.  The second question is whether or not the expert received or had reasonable access to confidential information.  *Koch*, 85 F.3d at 1182.  Confidential information includes "discussion of [the

retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Id.*

## II.     adidas's Past Engagements with Dr. Cavanagh, Especially the Still-Pending *Akeva* Litigation, Demonstrate Disqualification is Appropriate.

In this case, there is no doubt that adidas and Dr. Cavanagh entered into a confidential relationship.   adidas engaged Dr. Cavanagh for the *Akeva* litigation pursuant to a formal engagement letter and used him as a consultant in both that case and in the *Anatomic Research* matter.  *See* Kline Declaration, ¶ 6.  In engaging Dr. Cavanagh, adidas stated its expectation that Dr. Cavanagh would keep all information relating to the litigation confidential and not disclose it to anyone without prior approval.  *Id.*  Dr. Cavanagh agreed to do so.  Moreover, that particular relationship arose in a context where Dr. Cavanagh had previously consulted with adidas in another patent case and has consulted with adidas on technical matters as well.  Statement of Facts ("SOF"), *supra,* at ¶¶1-3.

As to the second issue, Dr. Cavanagh both had access to and received adidas's confidential information.   Dr. Cavanagh engaged in discussions with adidas's counsel concerning adidas's accused shoes and defenses to Anatomic Research's and, most recently, Akeva's claims of patent infringement.  *See id.*, ¶ 7.  As a part of those discussions, Dr. Cavanagh received confidential CAD drawings of adidas's accused shoes and component parts of accused shoes.  *Id.*.  Further, Dr. Cavanagh learned of adidas's strategy for defending in the *Akeva* case the accused a[3] technology -- the same technology accused by Nike in this case.  *Id.* A critical part of that strategy involved exploring potential testing.  While ultimately not used, such explorations represent work product adidas created that Nike should not now be able to use against it.

Indeed, the overlap between the accused technology in this case with the accused technology in the *Akeva* case renders the present matter one in which Nike essentially proposes to have Dr. Cavanagh switch sides.  Courts do not condone such conduct.  For example, in *Theriot v. Parish of Jefferson*, No. Civ. A. 95-2453, 1996 WL 392149, *1 (E.D. La. July 8, 1996), the court found that the expert witness had been "intimately involved" as a consultant and testified "on the part of Jefferson Parish in the very process" that was at issue.  *Id*. at *1-2.  The expert had been terminated by the defendant after the first litigation had come to a conclusion, but continued to be employed by the parish.  *Id*.  The expert testified that "he had not felt free to discuss with others" the information he had learned during the litigation, and the court found that he had been provided with "confidential information protected by the attorney/client and work product doctrines" that "bears directly upon the present lawsuit." *Id*. at *1-2.  Under the two-part test from *Koch*, the court found that the defendant was objectively reasonable in its belief that a confidential relationship existed, and that confidential information had been imparted because the two cases were so "intertwined that for all intents and purposes, [the expert] is being used by an adverse party in the same litigation." *Id.* at *2.  *See also Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc*., No. 95-8833, 2000 WL 42202, *4-5 (S.D.N.Y. Jan 19, 2000) (disqualifying expert who received confidential information in a prior relationship that was intertwined with the issues at stake in the case at hand); *Marvin Lumber & Cedar Co. v. Norton Co*., 113 F.R.D. 588, 590-91 (D. Minn. 1986) (previous relationship between plaintiff and potential expert laboratory that was "substantially related" to litigation resulted in disqualification of expert's testimony).

While this litigation involves a different plaintiff and different patents from the *Akeva* case, the subject matter is similarly intertwined.  Not only do the accused shoes at issue in both cases incorporate a[3] technology, but the patents at issue claim similar elements.  Akeva contends

there is a particular type of plate within the accused a[3] line of shoes; Nike also contends in this case that there is a plate in the a[3] line of shoes.  SOF, at ¶¶ 5, 7.  adidas hired Dr. Cavanagh to help defend the *Akeva* case and he gave specific testimony attacking and critiquing the Akeva expert's opinion regarding the existence and function of any a[3] plate.   Yet Nike apparently intends to hire him in this case to argue that the a[3] shoes infringe and to confirm the presence of a plate in the a[3] shoes. Thus, the Court should disqualify Dr. Cavanagh from this case so as to avoid burdening adidas with sorting out the many complications[2] arising from allowing Dr. Cavanagh to switch sides.

### III.     The Early Stage of this Litigation, Nike's Identification of Other Experts and the Public Interest Confirm that Dr. Cavanagh Should be Disqualified.

A final factor to consider includes any applicable policy objectives.  *Koch*, 85 F.3d at 1182.   These policy objectives include preventing conflicts of interests and maintaining the integrity of the judicial process versus countervailing policies of ensuring that parties have access to expert witnesses who possess specialized knowledge, and allowing experts to pursue their professional calling.   *Id*.   For example, a court may consider whether another expert is available and whether the opposing party had time to hire him or her before trial.  *Id. See Wyatt v. Hanan*, 871 F. Supp. 415, 422 (M.D. Ala. 1994); *Cordy v. Sherwin-Williams Co*., 156 F.R.D. 575, 582 (D.N.J. 1994).  Another related concern is that if experts can be easily disqualified, then "unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party."  *Id*. at 580.

Here, Nike has ample time to locate and hire another qualified expert and has apparently already located two other candidates.  There is no concern that adidas simply hired Dr. Cavanagh

---

[2] Nike may argue that adidas could simply withdraw Dr. Cavanagh as an expert in the *Akeva* case.  However, adidas would have no automatic right to substitute in a new expert and even moving the North Carolina court to allow such a result would create other burdens and issues.

to disqualify him from this case.  To the contrary, Dr. Cavanagh was hired to assist in adidas's defense of the *Akeva* litigation long before this case arose.  While adidas's defense of that matter was successful on summary judgment, the matter is on appeal and adidas could be placed in the awkward position of needing to use Dr. Cavanagh as a trial witness in the *Akeva* matter at the same time that it faces Dr. Cavanagh's testimony – on the same $a^3$ subject matter – in this litigation.

Under the circumstances, the need to prevent a clear conflict of interest prevails and disqualification is appropriate.  Our system is an adversarial one in which parties secure experts to articulate appropriate positions that are consistent with prevailing applicable scientific and technical standards.  Allowing Dr. Cavanagh to try to serve two parties at odds over how the accused $a^3$ technology operates challenges the integrity of the adversarial process and should be foreclosed with a disqualification order.  *See Koch*, 85 F.3d at 1182 ("The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process.").

## <u>CONCLUSION</u>

Dr. Cavanagh is acting as a consultant for adidas in an ongoing matter relating to the same technology.  As a part of that relationship, adidas has entrusted Dr. Cavanagh with its confidential information.  adidas respectfully moves this court to issue an order precluding Dr. Cavanagh from serving as an expert or consultant for Nike in this case.

Respectfully submitted this 28th day of August 2006.

/s/Catherine E. Hart

| | |
|---|---|
| Michael E. Jones | William H. Boice |
| State Bar No. 10929400 | bboice@kilpatrickstockton.com |
| mikejones@potterminton.com | Mitchell G. Stockwell |
| Allen F. Gardner | mstockwell@kilpatrickstockton.com |
| State Bar No. 24043679 | Catherine E. Hart |
| allengardner@potterminton.com | chart@kilpatrickstockton.com |
| POTTER MINTON | KILPATRICK STOCKTON LLP |
| A Professional Corporation | 1100 Peachtree Street, N.E. |
| 110 N. College, Suite 500 (75702) | Suite 2800 |
| P.O. Box 359 | Atlanta, Georgia  30309 |
| Tyler, Texas  75710 | (404) 815-6500 |
| (903) 597-8311 | (404) 815-6555 (Facsimile) |
| (903) 593-0846 (Facsimile) | |

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF CONFERENCE

This is to certify that Catherine Hart, counsel for Defendants, has conferred with David Stein, counsel for Plaintiff, regarding the matters included in this motion.  Mr. Stein states that this motion is OPPOSED.

/s/ Catherine E. Hart_____
Catherine E. Hart

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that the foregoing adidas Defendants' Motion to Disqualify Dr. Peter

Cavanagh and Brief in Support Thereof was electronically filed with the above-captioned Court

on August 28, 2006, with a notice of case activity to be generated and sent electronically by the

Clerk of said Court to:

> Fay E. Morisseau
> fmorisseau@mwe.com
> David M. Stein
> dstein@mwe.com
> McDermott Will & Emery LLC
> 18191 Von Karman Avenue, Suite 500
> Irvine, CA  92612-7108
>
> J. Thad Heartfield
> Heartfield & McGinnis, LLP
> 2195 Dowlen Road
> Beaumont, Texas  77706
> thad@heartfieldmcginnis.com
>
> Clayton E. Dark, Jr.
> Law Office of Clayton E. Dark, Jr.
> PO Box 2207
> Lufkin, Texas  75902
> cekrad@yahoo.com

<u>/s/ Catherine E. Hart</u>

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **NIKE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 9:06-cv-43 (RHC)** |
| | ) | |
| **v.** | ) | **Honorable Ron Clark** |
| | ) | |
| **ADIDAS AMERICA INC. D/B/A.** | ) | **JURY** |
| **ADIDAS INTERNATIONAL, ADIDAS** | ) | |
| **SALOMON NORTH AMERICA, INC.,** | ) | |
| **and ADIDAS PROMOTION** | ) | |
| **RETAIL OPERATIONS INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |


**ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY DR. CAVANAGH**

On this date came to be heard the adidas Defendants' Motion to Disqualify Dr.

Cavanagh.  After considering the motion, response, the evidence submitted therewith, and the

issues involved, the Court hereby disqualifies Dr. Cavanagh from acting as an expert in this

matter on behalf of the plaintiff, Nike, Inc.


_____