IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| NIKE, INC. ) | |
| ) | Case No. 9:06-cv-43-RC |
| Plaintiff, ) | |
| ) | |
| v. ) | Jury Trial Demanded |
| ) | |
| ADIDAS AMERICA INC. D/B/A ADIDAS ) | |
| INTERNATIONAL, ADIDAS SALOMON ) | |
| NORTH AMERICA, INC., and ADIDAS ) | |
| PROMOTIONAL RETAIL OPERATIONS ) | The Honorable Ron Clark |
| INC. ) | United States District Judge |
| Defendants. | |

**NIKE'S RESPONSE TO ADIDAS'S MOTION TO DISQUALIFY
DR. PETER R. CAVANAGH**

**I.     INTRODUCTION**

adidas asks the Court to exclude Dr. Peter F. Cavanagh from being an expert for NIKE in this case because, in his previous role as an expert for adidas in unrelated cases, he had access to certain adidas confidential information. adidas contends it is improper for Dr. Cavanagh to be NIKE's expert because that would amount to an impermissible "switching of sides." adidas's motion should be denied for a number of reasons.

First, adidas has failed to show that any information it disclosed to Dr. Cavanagh is relevant to this case. This is not a case where Dr. Cavanagh is "switching sides." Dr. Cavanagh was never on adidas's side in this case, and his earlier work for adidas was on subjects unrelated to what is at issue here. The fact that Dr. Cavanagh once consulted for adidas on unrelated matters does not disqualify him from assisting NIKE in this case.

Second, adidas has no right to seek the draconian remedy of disqualification of Dr. Cavanagh. In stark contrast with adidas's argument that he is currently engaged as its expert in on-going litigation, the record shows that Dr. Cavanagh completed a minor amount of work for adidas some two years ago on completely unrelated matters. He never agreed that he would not consult for one of adidas's competitors like NIKE. At most, he agreed to keep confidential the limited amount of information shared with him by adidas. There has been no showing that he will not do so. Indeed, NIKE hereby represents to the Court that it will not ask Dr. Cavanagh about any matters he learned from adidas. Thus, there is no reason to disqualify him.

Third, it appears, from the record before the Court, that there is not currently a confidential relationship between adidas and Dr. Cavanagh that would prevent Dr. Cavanagh from working as an expert for NIKE. For all practical purposes, adidas terminated any confidential relationship with Dr. Cavanagh more than two years ago when he provided an expert report in one of the unrelated cases. It is well established that once an expert testifies, any communication with that expert is subject to discovery and disclosure.

Fourth, even if adidas had a confidential relationship with Dr. Cavanagh, it has failed to carry its burden to prove that any of the information it provided to Dr. Cavanagh is currently

confidential or otherwise protected from discovery.  For example, some of the information that adidas claims to be confidential is parts of shoes, which appear to be publicly available.  A witness should not be precluded from consulting as an expert with the bare bones showing that adidas has proffered regarding the alleged confidential nature of its information.

Fifth, disqualifying Dr. Cavanagh would be against the public interest.  adidas is asking this Court to impose an implied non-competition covenant on Dr. Cavanagh because two or more years ago he spent a few hours consulting with adidas on unrelated litigation.  The public interest disfavors implied non-competition covenants, particularly of long duration.  Moreover, adidas has already brought Dr. Cavanagh into this case as a fact witness by relying on one of his patents as allegedly anticipating prior art to one of the two NIKE patents in suit.  Thus, NIKE has the right to present evidence, through Dr. Cavanagh as the inventor of this patent, to show that adidas is misconstruing his patent and the prior art.  It would be against the public interest to preclude Dr. Cavanagh from testifying in this case while at the same time allowing adidas to rely upon his patent as allegedly invalidating prior art.

adidas's real concern about Dr. Cavanagh has nothing to do with protecting its confidential information; it waived that long ago.  Rather, adidas simply wants to deprive NIKE of the opportunity to work with, and possibly present to the Court and the jury, the opinion of one of the world's renowned shoe experts.  adidas fails to offer any justification for this result.

## II.     BACKGROUND

### A.     Dr. Cavanagh Is A Leading Expert In The Athletic Shoe Industry.

Dr. Cavanagh is one of the world's leading experts in the shoe industry.  He holds a Ph.D in Anatomy, Human Biomechanics and a D.Sc. in Medicine from the University of London, and he is a Professor Emiritus at Penn State in the BioEngineering Department.  *See* adidas's Motion, Exh. A.  He has authored over 150 refereed articles, written 15 books, contributed chapters to 29 others books, participated in over 100 conference proceedings, and been an inventor on 9 issued and pending patents (including U.S. Patent No. 4,771,394), all in the field of biomechanics, with most emphasizing athletic shoes.  *Id.*

### B. Dr. Cavanagh's Previous Consultation With adidas Was Limited To Technology Unrelated To Issues In This Case.

Dr. Cavanagh has been retained at the present time to assist NIKE with respect to one of the two patents in suit, United States Patent No. 6,487,796.[1] The '796 patent deals with shoes having support elements in the heel portion, with the support elements having a canted top surface. Dr. Cavanagh may also assist NIKE on the second patent in suit, which deals with analyzing a signal generated by the movement of a person. His past work for adidas is totally unrelated with the inventions of either of these NIKE patents.

Dr. Cavanagh was first retained by adidas several years ago as a consulting expert in *adidas America, Inc. v. Anatomic Research, Inc.*, 3:01CV01720-AS (D. Ore.). *See* adidas's Motion, Exh. B, ¶ 4. The *Anatomic Research* case focused on a technology related to the "Feet You Wear" shoe design by adidas, a design that adidas does not contend contained either support elements with canted top surfaces or a system for analyzing a signal generated by a person's movement like those in the NIKE patents. While acting as an expert consultant for adidas in the *Anatomic Research* case, adidas contends that Dr. Cavanagh was asked to review various technical drawings and various adidas shoe designs related to their "Feet You Wear" shoes. *Id.* adidas does not contend it shared any litigation strategy with Dr. Cavanagh in that case. Furthermore, the "Feet You Wear" shoe is not at issue in this case.

Dr. Cavanagh was retained by adidas a second time as a testifying expert in *Akeva LLC v. adidas America, Inc.*, 1:03CV01207 (M.D.N.C.). *See* adidas's Motion, Exh. B, ¶ 6. Dr. Cavanagh completed his work for adidas in that case about two years ago, and, based on adidas's filing, it appears he spent only about 25 hours over 2 months working for adidas on that case.

At issue in the *Akeva* case was whether the a[3] line of shoes incorporated "a flexible plate having upper and lower surfaces and supported between at least a portion of the rear sole and at least a portion of the heel region of the upper, peripheral portions of the plate being restrained

---

[1] This is not the first time Dr. Cavanagh has worked with NIKE. Dr. Cavanagh previously worked as a consultant for NIKE. *See* adidas's Motion, Exh. A at 49.

from movement relative to an interior portion of the plate. . ." adidas's Motion at 3 and Exh. C. adidas does not contend that the *Akeva* case involves issues related to canted support elements in the heel of the shoe or a system for analyzing a signal generated by a person's movement like those claimed in the NIKE patents. adidas does not contend that Dr. Cavanagh was ever asked to give an opinion regarding the use of columns or similar structures in the $a^3$ shoe during the *Akeva* case, or to form any opinion on the issue of patent infringement. adidas does contend that one of its attorneys believes that Dr. Cavanagh may have learned some trial strategy of adidas in that case. *Id.*, Exh. B, ¶ 7. adidas does not, however, elaborate on what that trial strategy was, nor does it provide any evidence that the trial strategy was, or is now, confidential.

### III.   ADIDAS FAILED TO CARRY ITS BURDEN THAT DR. CAVANAGH SHOULD BE DISQUALIFIED.

Disqualification of an expert is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely. *See Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996); *McNamara v. Bre-X Minerals, Ltd.*, No. 97-159, 2003 U.S. Dist. LEXIS 25641, at *15 (E.D. Tex. Mar. 31, 2003) (disqualifying an expert is a power rarely exercised by the federal courts); *Mitchell v. Murphy Oil USA, Inc.,* No. 03-1645, 2003 U.S. Dist. LEXIS 15885, at *2 (E.D. La. Sept. 5, 2003) (same). *See also Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004); *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993).

An expert can be disqualified only if: (1) it is "objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed," and (2) confidential or privileged information was disclosed by the first party to the expert during the confidential relationship that is relevant to the current litigation. *Koch Ref. Co.*, 85 F.3d at 1181; *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1096. The party seeking disqualification of an expert bears the burden of proving <u>both</u> of these elements. *Koch Ref. Co.*, 85 F.3d at 1181. *See also Syngenta Seeds, Inc. v. Monsanto Co.*, No. 01-1331, 2004 U.S. Dist. LEXIS 19817, at *5 (D. Del. Sept. 27, 2004) (disqualification inappropriate if only one of these two factors is present).

Courts also consider a third element in determining whether an expert should be disqualified: the public interest in allowing or not allowing an expert to testify. *Koch Ref. Co.*, 85 F.3d at 1181; *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1094 (the Court should consider "issues of fundamental fairness . . . and whether any prejudice might occur if an expert is or is not disqualified"). adidas fails to show that any of these factors support disqualification here.

### A. adidas Has Improperly Requested Imposition Of The Draconian Remedy Of Disqualification.

Based on the record provided by adidas, all Dr. Cavanagh did for adidas was to perform a minor amount of consulting work for adidas that was completed some two years ago in unrelated litigation. His unspecified amount of work on the *Anatomic Research* case was completed years ago. And, at most, he spent about 25 hours working for adidas in the *Akeva* case. He has not performed any work for adidas since October 8, 2004. He never signed a non-competition agreement with adidas. He has not been paid a retainer by adidas over the past two years. Even though he performed only a limited amount of unrelated work for adidas that was completed two years ago and has no on-going formal relationship with adidas, adidas is now attempting to keep him from consulting with NIKE.

There is no justification for disqualifying Dr. Cavanagh. At most, he agreed to keep confidential the limited amount of unrelated information he received from adidas. There is no showing that he is not trustworthy enough to comply with that agreement. Moreover, NIKE hereby represents that it will not inquire of Dr. Cavanagh about any information he learned from adidas. That was not and is not NIKE's intention, and NIKE has no interest in this unrelated subject matter. There is no likelihood that any of adidas's confidential information will be disclosed by Dr. Cavanagh to NIKE, so there is no basis for entering any type of Order regarding his work for NIKE.

adidas complains that if Dr. Cavanagh works for NIKE, it would place adidas in an "awkward" position because it may have to cross-examine him. adidas's Motion at 1. adidas's "awkward position" argument is to no avail. First, any cross-examination would be on unrelated

issues. Second, adidas has already put itself in the "awkward" position by making Dr. Cavanagh a fact witness in this case (by alleging his patent is invalidating prior art). Finally, adidas's claimed "awkward position" does not justify disqualifying one of the world's leading experts from participating in this case merely because, year ago, he performed limited, unrelated consulting work for adidas.

### B. adidas Has Failed To Carry Its Burden To Show That The Information It May Have Shared With Dr. Cavanagh Is Confidential Or Otherwise Protectable.

Confidential information in this context includes "discussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Koch Ref. Co.*, 85 F.3d at 1182 (internal citation omitted); *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1094 (confidential information is information "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege."). Purely technical information is not considered "confidential" in the disqualification context. *Koch Ref. Co.*, 85 F.3d at 1182.

#### 1. adidas Has Failed To Prove That Any Confidential Information Was Provided To Dr. Cavanagh.

adidas has submitted insufficient evidence to carry its burden of showing that Dr. Cavanagh obtained confidential information from adidas that is sufficient to disqualify him from working with NIKE in this case. Instead of relying on the declaration of a full-time adidas representative to show that Dr. Cavanagh has confidential information, adidas relies solely on the declaration of one of its outside attorneys, Douglas Kline. Mr. Kline states that he has represented adidas in just two cases, the *Anatomic Research* case and the *Akeva* case. *See* adidas's Motion, Exh. B, ¶ 3. As to the *Anatomic Research* case, Mr. Kline states Dr. Cavanagh was retained as an expert, that he was sent confidential adidas drawings, and that there was a discussion with Dr. Cavanagh regarding the "Feet You Wear" shoe design, the adidas design

philosophy, and how to compare this shoe against the patent claims in that case. *Id.* at ¶ 4. There is a noticeable lack of any indication that Dr. Cavanagh was supplied with any information regarding adidas's strategies in the *Anatomic Research* case, the kinds of experts adidas expected to retain in the *Anatomic Research* case, adidas's views of the strengths and weaknesses of each side, and anticipated defenses in the *Anatomic Research* case. As to the *Akeva* case, Mr. Kline simply states an unsubstantiated belief that Dr. Cavanagh learned some unspecified strategy for defending against Akeva's patent infringement claims. *Id.* at ¶ 7.

## 2. adidas Waived Any Protection Afforded To Information It May Have Shared With Dr. Cavanagh In The *Akeva* Case When It Designated Him A Testifying Expert.

Any confidential relationship that would preclude Dr. Cavanagh from acting as an expert in this case was waived when adidas named Dr. Cavanagh as a testifying expert in the *Akeva* case. The law is clear that privileged information loses its privileged status when disclosed to, and considered by, a testifying expert. *See, e.g., TV-3, Inc. v. Royal Ins. Co. of Am.*, 193 F.R.D. 490, 491 (S.D. Miss. 2000) (Rule 26 allows discovery of "all communications between counsel and a retained testifying expert, even if those communications contain the attorneys' mental impressions or trial strategy or is otherwise protected by the work product privilege."); *Johnson v. Gmeinder*, 191 F.R.D. 638, 647 (D. Kan. 2000) ("[A]ny type of privileged material, including materials or documents prepared by a non-testifying expert, lose their privileged status when disclosed to, and considered by, a testifying expert."); *Lamonds v. GMC*, 180 F.R.D. 302, 305 (W.D. Va. 1998) (applying rule to opinion work product); *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D. Md. 1997) (same); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 66 (S.D.N.Y. 1997) (same); *Karn v. Ingersoll Rand Co.*, 168 F.R.D. 633, 639-40 (N.D. Ind. 1996) (same); *Barna v. United States*, No. 95 C 6552, 1997 U.S. Dist. LEXIS 10853, (N.D. Ill. July 18, 1997) (same).

adidas had a choice to protect its confidential relationship with Dr. Cavanagh, including any information regarding its trial strategy that it shared with Dr. Cavanagh, by simply not

naming him as a testifying expert. adidas apparently weighed this choice and decided it was in its best interest to name Dr. Cavanagh as a testifying expert. By naming him as a testifying expert, adidas waived the privilege and terminated any confidential relationship it had with him that prevented the disclosure of information. adidas cannot now try to reclaim the right it voluntarily waived.

> **3. adidas Has Failed To Present Any Evidence That Dr. Cavanagh Was Presented With Any Confidential Information By adidas In The *Anatomic Research* Or *Akeva* Cases.**

There are several significant deficiencies with adidas's submission. As an initial matter, there is no evidence that any of the information purportedly shared with Dr. Cavanagh is still confidential. Indeed, some of the classifications of information, such as the design of a publicly available shoe like the "Feet You Wear" shoe design, can hardly be considered confidential under any standard.

Next, adidas has failed to provide any specifics regarding the nature of the information disclosed to Dr. Cavanagh and how such information is kept confidential by adidas. adidas has full control of the evidence on this point, and, therefore, it could have easily provided details about this information and how it maintains this information as confidential. Instead, the only evidence adidas has offered is testimony that simply identifies classes of information coupled with the self-serving conclusion that such information is confidential. This does not establish confidentiality.

adidas has also failed to offer any evidence that any trial strategy it "believes" it may have discussed with Dr. Cavanagh regarding defending its claims in the *Akeva* case is still confidential. adidas won the *Akeva* case by summary judgment, and that case is now on appeal Thus, at least part of its strategy in defending the case was made part of the public record in litigating the case. There is no evidence that there is any other litigation strategy it may have provided to Dr. Cavanagh that was not fully disclosed when it filed for summary judgment.

The burden is on adidas to come forward with evidence regarding the confidentiality, and indeed, the value, of the information purportedly known by Dr. Cavanagh.  adidas has completely failed to meet this burden.

### C. adidas Has Failed To Carry Its Burden To Show That Any Information It Shared With Dr. Cavanagh Is Relevant To This Case.

adidas's contention that Dr. Cavanagh is "switching sides" in this case is wrong because Dr. Cavanagh was never on adidas's side on any of the issues that are germane to this case. Indeed, Dr. Cavanagh's consultations for adidas in the *Anatomic Research* and the *Akeva* cases are completely unrelated to his expected consultation for NIKE.

#### 1. Dr. Cavanagh's Work As A Consulting Expert In The *Anatomic Research* Case Was Unrelated To The Technology At Issue Here.

In the *Anatomic Research* case, Dr. Cavanagh consulted on the "Feet You Wear" shoe, a design that adidas does not contend contained either support elements with canted top surfaces or a system for analyzing a signal generated by a person's movement like those in the NIKE patents.  See adidas's Motion, Exh. B, ¶ 4.  That shoe is not involved in this case, and, in any event, that case ended years ago.  There is absolutely no overlap between the subject matter of the *Anatomic Research* case and this one.

#### 2. Dr. Cavanagh's Testimony And Expert Report In The *Akeva* Case Did Not Relate To The Use Of Columns Or Similar Structures In The $a^3$ Shoe.

Although Dr. Cavanagh's work in the *Akeva* case did involve the $a^3$ shoe (one of many accused shoes here), that work concerned only a specific part of the $a^3$ shoe, namely whether the shoe had a specific type of plate.  See adidas's Motion at 3-4.  As adidas acknowledges, the key issue in the *Akeva* case was whether the $a^3$ shoe had a flexible plate having upper and lower surfaces supported between at least a portion of the rear sole and at least a portion of the heel region of the upper, the peripheral portions of the plate being restrained from movement relative

to an interior portion of the plate. *Id.* at 3. This limited topic was the subject of Dr. Cavanagh's consultation for adidas in the *Akeva* case.

There is nothing in this case remotely concerning whether the $a^3$ shoe has the type of plate that was at issue in the *Akeva* case. This case does not deal with a flexible plate or restraining the flexible plate from movement. At most, one of the asserted claims of one of the patents deals with the location of a heel plate, but not the flexibility and lack of movement of the plate. Indeed, adidas has not even argued that the location of the heel plate of the $a^3$ shoe has anything at all to do with the consultation provided by Dr. Cavanagh to adidas. There simply is no overlap of subject matter, and, therefore, no "switching of sides." Any information Dr. Cavanagh received in the *Akeva* case about the flexibility of a plate has no bearing on NIKE's claims here.

adidas also generally claims that one of its attorneys believes that some trial strategies in the *Akeva* case were discussed with Dr. Cavanagh. A general reference like this, without more, is not sufficient to justify the draconian remedy of disqualifying Dr. Cavanagh. Moreover, there are material differences between this case and the *Akeva* case. For example, the two cases involve different parties, different patents, different claim construction issues, different inventors, and different lawyers. Further, adidas has failed to assert that the trial strategies it claims to have discussed with Dr. Cavanagh in the *Akeva* case have anything at all to do with its trial strategies in this case. Thus, there has been no showing of any potential harm to adidas in this case as a result of a vague belief by one of its attorneys that a trial strategy was discussed with Dr. Cavanagh in an unrelated case.

adidas's reliance on *Theriot v. Parish of Jefferson*, No. 95-2453, 1996 U.S. Dist. LEXIS 9713 (E.D. La. July 8, 1996) (Motion at 7) is misplaced. In *Theriot*, the court disqualified an expert in a subsequent case because the prior and subsequent cases "are so intertwined that for all intents and purposes, [the expert] is being used by an adverse party in the same litigation." *Id.* at *11. Here, there is no connection between information that Dr. Cavanagh received in the prior cases involving adidas and this case. Moreover, unlike this case, it does not appear that in

*Theriot* there had been a waiver of the privilege by naming the expert as a testifying expert in the prior litigation.

### D. Disqualifying Dr. Cavanagh Would Be Against The Public Interest.

Disqualifying Dr. Cavanagh as an expert for NIKE in this case would be against the public interest, particularly because adidas has made Dr. Cavanagh a fact witness by identifying U.S. Patent No. 4,771,394 as one of the patents it is relying on for its invalidity allegations. U.S. Patent No. 4,771,394 lists Dr. Cavanagh as the inventor. *See* Exh. 1 hereto.

By relying on his patent as allegedly invalidating prior art, adidas has opened the door to have Dr. Cavanagh testify in this case. NIKE has the right to confer with him to test adidas's position that his patent is invalidating prior art. NIKE also has the right to decide whether to have Dr. Cavanagh as a witness (for summary judgment or at the time of trial) to rebut adidas's invalidity case. adidas simply cannot have it both ways - - it cannot rely upon Dr. Cavanagh's patent as allegedly invalidating prior art, but keep NIKE from consulting with him and possibly calling him as a witness to refute adidas's case. This would run contrary to having a full, fair disclosure of all facts and relevant opinions during the trial of this case.

In addition, Dr. Cavanagh completed his limited work for adidas (on unrelated matters) about two years ago, and he has not received any information from adidas that is relevant to this case. Thus, to disqualify him from this case would be tantamount to imposing a non-competition covenant on him with a duration of over two years merely because he performed something like 25 hours of work. The public interest is served by allowing Dr. Cavanagh, as one of the world's leading experts, to work on, and perhaps testify in, this case for NIKE.

### IV. CONCLUSION

adidas is attempting to deprive NIKE of the opportunity to work with one of the world's leading shoe experts and is asking the Court to impose the exceedingly harsh remedy of disqualification simply because Dr. Cavanagh performed a limited amount of work for adidas two years ago on completely unrelated technology. adidas has not presented any credible evidence, from either the *Anatomic Research* or *Akeva* cases, that Dr. Cavanagh was privy to

any discussions regarding adidas's strategies, the kinds of experts adidas expected to retain, adidas's views of the strengths and weaknesses of each side, the role of each of the party's witnesses to be hired, or the anticipated defenses, so there is no basis for disqualification. Moreover, adidas waived any right to claim that the information provided to Dr. Cavanagh during the *Akeva* case was confidential when Dr. Cavanagh provided an expert report and testified as an expert. Finally, disqualifying Dr. Cavanagh would be against the public interest because adidas made Dr. Cavanagh a fact witness in this case by identifying one of Dr. Cavanagh's patents as allegedly invalidating prior art. Accordingly, NIKE respectively asks the Court to deny adidas's motion to disqualify Dr. Cavanagh.

Dated: September 8, 2006            Respectfully submitted,

                                   By:    /s/ Thad Hearfield
                                        J. Thad Heartfield
                                        Texas Bar No. 09346800
                                        Law Offices of J. Thad Heartfield
                                        2195 Dowlen Road
                                        Beaumont, Texas 77706
                                        Phone: 409.866.3318
                                        Fax:     409.866.5789
                                        E-mail: thad@jth-law.com.

                                        Clayton E. Dark, Jr.
                                        Texas Bar No. 05384500
                                        Law Office of Clayton E. Dark, Jr.
                                        P. O. Box 2207
                                        Lufkin, Texas 75902-2207
                                        Phone: 936.637.1733
                                        Fax:     936.637.2897
                                        E-mail: cekrad@yahoo.com

                                        Fay E. Morisseau (Texas Bar No. 14460750)
                                        David M. Stein (Texas Bar No. 00797494)
                                        McDERMOTT WILL & EMERY LLP
                                        18191 Von Karman Avenue, Suite 500
                                        Irvine, CA 92612-7108
                                        Phone: 949.851.0633
                                        Fax:     949.851.9348
                                        E-mail: fmorisseau@mwe.com

-13-

E-mail:  dstein@mwe.com

Attorneys for plaintiff NIKE, Inc.

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 8, 2006.

              /s/ Thad Heartfield
              Thad Heartfield

ORC 396161-4.068066.0020