# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| NIKE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 9:06-CV-43 (RHC) |
| | ) | |
| v. | ) | JURY |
| | ) | |
| ADIDAS AMERICA INC. et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ADIDAS DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY DR. PETER CAVANAGH

William H. Boice
Mitchell G. Stockwell
Catherine E. Hart
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia  30309
(404) 815-6500
(404) 815-6555 (Facsimile)

Michael E. Jones
Allen F. Gardner
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P.O. Box 359
Tyler, Texas  75710
(903) 597-8311
(903) 593-0846 (Facsimile)

Adidas replies as follows to Nike's opposition to its motion to disqualify Dr. Cavanagh:

1. Nike's response fails to grapple with the essential issue raised by adidas's motion: Should Dr. Cavanagh be allowed to represent Nike in asserting the $a^3$ shoes infringe upon Nike's patent even as he was hired to represent adidas in defending the same $a^3$ shoes from an infringement claim by Akeva?

Nike's response never deals with this critical point in part because it mistakenly and wrongly characterizes the *Akeva* litigation and adidas's relationship with Dr. Cavanagh as completed. That is not true. While he did the work in that case several years ago, the *Akeva* case is on appeal and Dr. Cavanagh's engagement is active. adidas, of course, would be happy to have the summary judgment in the *Akeva* case affirmed and the entire matter resolved, but it must plan for a situation in which it may need to defend itself at both a trial in this case and a trial in the *Akeva* litigation. The *Akeva* case was resolved on, essentially, an issue of claim construction. If the Federal Circuit disagrees with the lower court's claim constructions, the case will have to be tried and the performance of the heel plate, and Dr. Cavanagh's testimony, will be at issue

2. Nike's second, erroneous premise is that Dr. Cavanagh's work in *Akeva* and this case would not overlap and, so, there is no "side-switching" involved. Nike does not dispute that in both this case and the *Akeva* matter, adidas's $a^3$ shoes are accused of having the feature of a plate beneath the heel. In *Akeva*, the issue is whether the plate operates to provide spring; in this case, the issue is how the plate interacts with the allegedly "canted" columns of the shoe. In both cases, the performance of the plate in use is highly relevant. Nike does not dispute that Dr. Cavanagh consulted on the performance of the "plate" in the $a^3$ shoes and Nike does not say it will circumscribe Dr. Cavanagh's testimony to avoid addressing exactly the same issues.

Indeed, Nike cannot make that representation. In both of these cases, Dr. Cavanagh's testimony is really going to be about the same thing, *i.e.*, what heel plates in shoes do and how they behave. Moreover, consider the key elements that are at issue in the '796 patent: in addition to the issue of "plates," the '796 patent requires demonstrating that the top of the support elements are "canted" and that the support elements are resilient and compressible. As the Court can appreciate, when one runs in a shoe, all of these elements interact together – the heel plate presses on any column, which may then compress and cant – rendering testing as to whether and how this happens in both accused and prior art shoes a critical point that will be in contention. To establish these points, Dr. Cavanagh will at least consider testing the accused $a^3$ shoes – and will do so having in mind the same sorts of tests he discussed with adidas's counsel in defense of the *Akeva* litigation. And what will happen if Dr. Cavanagh is asked to take a position in this case that is adverse to adidas's interest in the *Akeva* litigation? In short, Nike has not rebutted adidas's showing of a clear overlap between the technologies at issue in the *Akeva* case and this case and Nike's use of Dr. Cavanagh in this matter presents the very real possibility that he will be on different sides of the same issue in the two litigations.

3. Nike's effort to show adidas has not met its burden that Dr. Cavanagh received confidential information founders in view of several facts that it never disputed or even tried to undermine. First, it is undisputed that a confidential relationship did, and continues, to exist. Second, Mr. Kline's unrebutted testimony is that confidential information concerning adidas's shoes – including $a^3$ shoes at issue in this case -- and litigation strategy was exchanged between Dr. Cavanagh and adidas's counsel, Mr. Kline.[1]

---

[1] Nike's opposition argues that adidas has not shown that one of its employees gave Dr. Cavanagh confidential information. That assertion is legally irrelevant. Mr. Kline swears that he

Nike attacks this evidence, asserting that Mr. Kline's "generalized" statements do not carry the day.[2] But adidas need not waive its work product privilege and specify the nature of the tests and consulting work that was done. Courts simply do not require some heightened burden in these circumstances—especially where adidas has shown the overlapping elements and issues between the Akeva patents and Nike's 796 patent.

Finally, that Dr. Cavanagh acted as a testifying expert in the *Akeva* case (but not the *Anatomic Research* case), does not preclude the relief adidas seeks here. While courts have held that confidential information provided to experts may be discovered by the opposing party so as to more effectively cross-examine that expert, nothing in those decisions allows the opposing or any other party to hire the expert simply because the expert testified. To allow a contrary rule would encourage the very "side switching" *Koch* and its progeny forbid.[3]

4.     Nike asserts that adidas's motion is less about public interest than adidas's desire to deprive Nike of a good expert. For example, Nike implies that excluding Dr. Cavanagh as an expert witness means Nike could not talk to him about his patents or call him as a fact witness on invalidation of the '314 patent. That is wrong – parties can contact and use fact witnesses informally or through process regardless of their status as an expert, provided that counsel is careful to ensure that the confidentiality of expert conclusions is maintained. More significantly, adidas agrees with Nike that Dr. Cavanagh's testimony about the '314 patent would not be

---

did so and that the engagement of Dr. Cavanagh was on adidas's behalf. Thus, the unrebutted evidence is that adidas's agent, Mr. Kline, did provide confidential information.

[2] Nike also said Dr. Cavanagh did not do much work and incorrectly represented that Dr. Cavanagh only did 25 hours worth of work that ended in October, 2004. This is curious since Nike was aware that Dr. Cavanagh did additional work because, at Nike's request, adidas sent Nike's counsel additional invoices Dr. Cavanagh had generated. Ex. A.

[3] For example, in *Theriot v. Parish of Jefferson*, No. Civ. A. 95-2453, 1996 WL 392149, *1 (E.D. La. July 8, 1996), the expert had been named as a testifying expert and actually testified, but was later disqualified when he sought to switch sides. Thus, simply allowing an expert to testify does not mean the hiring party cannot achieve relief when the expert seeks to switch sides.

related to any of the confidential shoe design or testing information adidas shared with Dr. Cavanagh.  Nike is not proposing to restrict his expert testimony to that subject matter, however, and instead seeks to offer his opinions in the same areas and about the same shoes that were at issue in *Akeva*.  Here, the public interest is to limit Dr. Cavanagh's testimony to fact or expert opinions concerning only the '314 patent, especially where ample time remains for Nike to select another expert for the '796 subject matter.

Respectfully submitted this 12th day of September, 2006.

|  |  |
|---|---|
|  | /s/Catherine E. Hart |
|  | (w/permission by Allen F. Gardner) |
| Michael E. Jones |  |
| State Bar No. 10929400 | William H. Boice |
| mikejones@potterminton.com | bboice@kilpatrickstockton.com |
| Allen F. Gardner | Mitchell G. Stockwell |
| State Bar No. 24043679 | mstockwell@kilpatrickstockton.com |
| allengardner@potterminton.com | Catherine E. Hart |
| POTTER MINTON | chart@kilpatrickstockton.com |
| A Professional Corporation | KILPATRICK STOCKTON LLP |
| 110 N. College, Suite 500 (75702) | 1100 Peachtree Street, N.E. |
| P.O. Box 359 | Suite 2800 |
| Tyler, Texas  75710 | Atlanta, Georgia  30309 |
| (903) 597-8311 | (404) 815-6500 |
| (903) 593-0846 (Facsimile) | (404) 815-6555 (Facsimile) |

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 12th day of September 2006. Any other counsel of record will be served by first class U.S. mail on this same date.

/s/ Allen F. Gardner
Allen F. Gardner